IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCINDA EDDY, )<br>)<br>        **Plaintiff,** )<br>)<br>  v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>        **Defendant.** )<br>) | No. 17 C 3316<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Lucinda Eddy's ("Plaintiff") claims for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment, [Doc. No. 12] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

# BACKGROUND

## I. Procedural History

Plaintiff filed her applications for DIB and SSI in August 2013, alleging disability due to Type II bipolar disorder. (R. 181–88, 208.) Her applications were denied initially and again upon reconsideration. (R. 74–123.) Plaintiff presented for a hearing before an ALJ on January 27, 2016, represented by counsel. (R. 39–79.) A vocational expert was present and offered testimony. (*Id.*) On March 17, 2016, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 15–38.) The Appeals Council denied review on February 28, 2017, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–6.)

## II. ALJ Decision

On March 17, 2016, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 15–38.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 26, 2013, her alleged onset date. (R. 20.) At step two, the ALJ found that Plaintiff suffered from severe impairments of affective disorder (bipolar II/depression), anxiety/panic disorder, and personality disorder. (R. 21.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); (*Id.*)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a medium exertional level, subject to several limitations.[1] (R. 23.) At step four, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. (R. 32.) At step five, the ALJ found that, consider Plaintiff's age, education, work experience, and her RFC, there were jobs that existed in significant numbers in the national economy that she could perform, including laundry worker, day worker, and general office clerk. (R. 32–33.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*)

## **DISCUSSION**

### III.   **ALJ Standard**

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[1] The ALJ RFC also provided that Plaintiff is:
> [L]imited to only occasionally working on ladders, ropes and scaffolds and no more than frequent climbing of ramps and stairs. Further, she must avoid more than moderate exposure to moving machinery and unprotected heights. Mentally, [Plaintiff] is limited to simple, routine, repetitive tasks in a work-environment free of fast paced production requirements that involve only simple, work-related decisions, with few, if any, work place changes. In addition, [Plaintiff] is limited to jobs involving only occasional with co-workers, supervisors and the general public.

(R. 23.)

3

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

### IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ,

5

the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron*, 19 F.3d at 333.

V.     **Analysis**

Plaintiff argues remand is appropriate because the ALJ: (1) erred when considering the "Paragraph B" criteria; (2) improperly evaluated her subjective symptom allegations; (3) erroneously discounted the medical opinion evidence; and (4) provided incomplete hypotheticals to the vocational expert. For the reasons the follow, the Court disagrees.

**A. "Paragraph B" Criteria**

In her decision, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08, particularly because they did not satisfy "Paragraph B" criteria (which are the same for each of the relevant listings). 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.04, 12.06, 12.08; (R. 21–22.) To meet the Paragraph B criteria, a claimant's symptoms must include at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, and pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* Plaintiff argues that the ALJ's

determination was erroneous because she failed to utilize the special technique for review of mental impairments.

### i. Activities of Daily Living

First, the ALJ determined that Plaintiff had mild restrictions in her activities of daily living because her psychiatrist indicated that she was able to adequately perform most of her self-care functions, she independently took her medications, and her mother reported that she engaged in a wide range of daily activities. (R. 22.)

Plaintiff's primary complaint is that these were the "only specific" examples the ALJ considered when evaluating her activities of daily living. Moreover, Plaintiff argues that this evidence does not adequately reflect (or, in other words, overestimates) her abilities. For example, she cites evidence that she walks her dog, watches television, and sleeps for most of the day. (R. 58–59.) Likewise, she point out that her mother opined that her mental and physical inability to stay on task due to short-term memory loss had caused her to lose jobs. (R. 218.)

Contrary to Plaintiff's assertion, later in her opinion, the ALJ cites much of the evidence Plaintiff complains she ignores. For example, the ALJ notes that Plaintiff spends her days watching television, sleeping, caring for pets, and cleaning. (R. 28.) Likewise, the ALJ points out that Plaintiff's short-term memory had caused her to lose jobs, that she does not spend a lot of time with others, and that she has some difficulties with completing tasks. (R. 29.) After consideration of all of this evidence, the ALJ determined that Plaintiff's impairments only led to

7

mild limitations in her activities of daily living. Thus, Plaintiff's argument that the ALJ did not provide a full discussion of her daily activities when issuing her decision is without merit. To the extent that Plaintiff is arguing that she would have weighed that evidence differently, her argument is impermissible. *See Herr,* 912 F.2d at 181 (noting that where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner).

### ii. Difficulties in Maintaining Social Functioning

In her decision, the ALJ opined that Plaintiff would have moderate limitations in social functioning. (R. 22.) While acknowledging Plaintiff's allegations that she had difficulty being around others, the ALJ noted that Plaintiff had sought and maintained several part- and full-time jobs (sales associate, cashier, and home care provider), all of which required some level of interaction, cutting against her alleged limitations. (R. 22, 29.) The ALJ supported her determination with evidence that Plaintiff reported that she enjoyed working these jobs to her psychiatrist. (R. 22.) In addition, the ALJ pointed out that Plaintiff engaged in pleasant interactions during the hearing and with her health care providers. (*Id.*) Moreover, the ALJ highlighted that her difficulty interacting increased during periods of personal crisis. (*Id.*)

Plaintiff complains that the ALJ placed too much emphasis on her ability to work without considering that she could not sustain simple part-time jobs. Although this is Plaintiff's assertion, the ALJ's decision reveals that Plaintiff's left certain

8

jobs due to personal reasons, not because she was unable to handle them. (R. 29.) Moreover, the ALJ provided other reasons, beyond Plaintiff's work history, in support of her finding at this stage. Finally, Plaintiff points to no medical opinion evidence[2] that she could not perform at the interaction-level provided in the ALJ's RFC. Accordingly, the ALJ made no error at this stage.

### iii. Difficulties in Maintaining Concentration, Persistence, or Pace

With regard to concentration, persistence, or pace, the ALJ determined that Plaintiff would have moderate difficulties. (R. 22.) Although she acknowledged Plaintiff's bipolar symptoms, she noted that they had been mild for much of the relevant time period, and that her examinations rarely revealed any difficulties with cognitive or mental functioning. (*Id.*) In addition, the ALJ noted that the jobs that Plaintiff had performed involved a concentration level at or above the one provided in her RFC. (*Id.*)

Similar to her previous argument, Plaintiff complains that the ALJ relied too heavily on her ability to perform work without considering the fact that Plaintiff could not maintain a part-time job. But, for similar reasons, this argument fails. Again, the ALJ noted that Plaintiff incurred job changes, in part, due to personal reasons, not an inability to meet the demands. (R. 29.) Moreover, Plaintiff's employment was not the only reason the ALJ found she would experience only moderate limitations in concentration, persistence, or pace. The ALJ also compared

---

[2] Plaintiff cites to the findings of Dr. Mary Ellen Walsh, M.D. For the reasons provided below, this argument is not convincing.

Plaintiff's alleged symptoms with her mental status findings, noting that there was inconsistency between the two. Therefore, the Court finds no error on this point.

### iv. Repeated Episodes of Decompensation

The fourth and final prong of the Paragraph B criteria requires "repeated episodes of decompensation" to include "three episodes within 1 year, or an average of once every four months . . . ." 20 C.F.R., Part 404, Subpart P, App. 1 § 12.00(C)(3). An episode must last at least two weeks to qualify as an "extended duration." *Id.*

In her assessment of this provision, the ALJ considered two hospitalizations, one from November 2013 and one from March 2015, as episodes of decompensation each of an extended duration, although neither appeared to last two weeks. (R. 22.) Nonetheless, the ALJ found that these episodes could not meet the requirements of the regulations because they occurred over an eighteen-month period and thus fell short of the required three episodes in one year. (*Id.*) Plaintiff's argument ignores this fact. Moreover, Plaintiff does not point to any episodes of decompensation of extended duration which would meet the paragraph B criteria. Accordingly, the Court finds no error.

### v. Medical Evidence

Plaintiff also relies on a report from Dr. Mary Ellen Walsh, M.D., her long-time treating physician, who opined that she would have moderate restriction in activities of daily living, marked restrictions in social function and concentration, persistence or pace, and that she experienced repeated episodes of extended decompensation. As discussed below, the ALJ properly discounted the opinion of Dr.

Walsh, therefore, no error occurred when she did not rely on it. Accordingly, the ALJ's Paragraph B finding rests on substantial evidence.

## B. Credibility

Next, Plaintiff argues that the ALJ improperly assessed her subjective symptom statements and credibility.[3] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder*, 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence de novo but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,

---

[3] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). However, the SSA clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued her opinion on March 17, 2016. Therefore, the ALJ properly applied SSR 96-7p.

11

539–40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck*, 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Plaintiff's credibility argument primarily focuses on the ALJ's treatment of her employment history. In general, the ALJ found discrepancies in Plaintiff's explanations for leaving various jobs. For example, the ALJ pointed out that Plaintiff's Work Activity Report indicated she was terminated from her job as a cashier for making too many mistakes, but Plaintiff later described the job as a "no-brainer." (R. 21, 25.) Similarly, Plaintiff testified that she could not work due to problems with concentration, but the ALJ pointed to a treatment note which revealed that Plaintiff left her job as a social worker because she wanted to return to school, indicating a reason other than her bipolar as explanation for leaving her job. (R. 25.) Plaintiff's argument that the ALJ misevaluated her symptom allegations, and ignored evidence that her part-time jobs ended due to absenteeism, lack of focus, failure to complete tasks, and mistakes, ignores this conflicting

12

evidence that the ALJ relied on. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995) (stating that ALJs may discount subjective complaints that are inconsistent or conflicting with the evidence as a whole.)

The ALJ also considered the role that personal events had on Plaintiff's hospitalizations. Specifically, the ALJ noted that "each hospitalization was precipitated by significant personal stressors" including a break up, court eviction proceedings, and a car repossession. (R. 28.) She also noted that the two hospitalizations that occurred during the relevant period were brief (three to four days) and that Plaintiff was able to return to her jobs without any reported problems. (*Id.*) Plaintiff classifies the ALJ's consideration of her life stressors as "absurd", but points to no authority which demonstrates that ALJ's may not consider this type of evidence when evaluating credibility.

Lastly, the ALJ analyzed Plaintiff's medication use. She observed that adjustments in Plaintiff's medications had effectively kept her symptoms under control, with no side effects. (R. 28, 30.) Similarly, she noted that Plaintiff's treatment, "which consist[ed] mainly of meeting with a psychiatrist no less than every three months for medication management" had been effective in keeping her symptoms under control. (R. 29–30.) Plaintiff's argues that the ALJ mischaracterized her treating relationship with Dr. Walsh, her psychiatrist, ignoring evidence that she provided counselling and placed Plaintiff on a list for group therapy. To the contrary, the ALJ later noted that Dr. Walsh had established

13

a treatment plan and referred Plaintiff to group therapy. (R. 27.) Thus, any error Plaintiff alleges on this point is misplaced.

Based on the foregoing, it is clear that the ALJ properly evaluated Plaintiff's credibility based on the available objective medical evidence, Plaintiff's statements, her medication, and her life stressors. Accordingly, the ALJ's credibility determination is supported by substantial evidence. *Schmidt*, 496 F.3d at 843 (explaining that the court will overturn an ALJ's credibility determination where it is patently wrong.)

**C. Medical Opinion Evidence**

Third, Plaintiff argues that the ALJ did not support her decision to discount the opinion of Dr. Mary Ellen Walsh, M.D., with substantial evidence. Plaintiff established care with Dr. Walsh in mid-2010 and continually presented to her for medication management and treatment of her bipolar disorder. (R. 488–521, 528–30.) On September 11, 2015, Dr. Walsh completed a Mental Disorders Report wherein she opined, among other things, that Plaintiff's affective disorder resulted in moderate restrictions of activities of daily living; marked difficulties in maintaining social functioning and concentration, persistence, or pace; and one to two repeated episodes of decompensation of extended duration. (R. 528–30.) Based on her entire assessment, Dr. Walsh opined that Plaintiff could function in a competitive work setting in a limited-stress job, only if her symptoms were well-controlled. (R. 529.)

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See Id.* The ALJ here squarely addressed these factors when according only "partial weight" to Dr. Walsh's opinions.

To begin, the ALJ acknowledged that Dr. Walsh had been Plaintiff's long-time treating physician. (R. 31.) Next, the ALJ noted that Dr. Walsh did not account for the inconsistency between her marked limitations findings and Plaintiff's actual day-to-day functioning, which included working several jobs and "being out in the world in a fairly normal way." (*Id.*) Plaintiff alleges this is mischaracterization of her daily life, but also admits this is a rehashing of her earlier argument, wherein she claims that the ALJ ignored evidence that she sleeps all day, watches television, and panics about going outside. As previously discussed, the ALJ did not ignore

15

these findings. In fact, she highlighted much of the evidence Plaintiff claims she neglected. *Zurawski*, 245 F.3d at 889 (noting that an ALJ need not discuss every piece of evidence in the record, so long as she provides a glimpse into her reasoning.)

Next, the ALJ pointed out that Dr. Walsh's indication that Plaintiff would have marked limitations that prevented her from working was contradictory to her conclusion that Plaintiff could sustain competitive work, negatively impacting the weight her opinion should be given. (R. 31.) Plaintiff alleges that the ALJ not only took her ability to work out of context, but focused on her capacity for work rather than the portion of the report about her symptomology. According to Plaintiff, Dr. Walsh was fully aware Plaintiff desired to work, therefore opined she could sustain competitive employment for Plaintiff's benefit, but also knew that working would have effects on her condition.

Plaintiff's argument attempts to inject explanation into Dr. Walsh's opinion on her behalf that she herself did not provide. Dr. Walsh did not expand on why she opined Plaintiff could work while having marked limitations in two of the "Paragraph B" criteria. Plaintiff fails to demonstrate how the ALJ erred when she evaluated Dr. Walsh's opinion based on the information actually contained Dr. Walsh's report. Accordingly, it was reasonable for the ALJ to find discrepancy between Dr. Walsh's finding that Plaintiff could sustain competitive work and her opinion that she experience marked limitations to a degree that would render her unable to work.

The ALJ also expressed concern that Dr. Walsh was not using the term "marked" as it is used under the Agency regulations, but based on her own interpretation. Plaintiff counters that, if this was a concern for the ALJ, she should have re-contacted the physician for clarification. But, clarification was not needed in this case. An ALJ need recontact a treating physician only when the evidence received "is inadequate for [her] to determine whether [the claimant is] disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). The ALJ merely remarked that the term "marked" was undefined in Dr. Walsh's opinion, therefore she could not determine if the doctor was using it as it is defined under the regulations. More to the point, Dr. Walsh opined that Plaintiff could work, albeit as long as her symptoms were controlled.

Finally, the ALJ noted that treatment notes dated two weeks after Dr. Walsh issued her opinion indicated that Plaintiff showed continued improvement and stability, in addition to maintaining several jobs. (R. 31.) Plaintiff nonetheless claims the ALJ could not rely on this evidence because improvement does not give an accurate description of an individual's true mental state. Rather, Plaintiff points out, the key is whether an individual has improved to be capable of sustaining full-time work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). The ALJ did not cite Plaintiff's improvement to demonstrate she was not disabled, but rather as evidence which contradicted Dr. Walsh's opinion, and thereby diminished the weight she accorded it. The ALJ also discounted Dr. Walsh's record because she failed to address the impact that Plaintiff's psychosocial stressors (such as

17

breakups, evictions, family conflicts, car repossession and general financial pressure) would have on her symptoms. (R. 31.) Based on this thorough discussion, it is clear that the ALJ properly discussed necessary factors when discounting Dr. Walsh's opinion. Therefore, the Court finds no error at this step.

### D. Hypothetical Questions to the Vocational Expert

Finally, Plaintiff argues that ALJ's hypothetical questions to the vocational expert did not adequately account for her limited abilities in social functioning.

As an initial matter, the Court agrees with Plaintiff that "a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) (citation omitted). But, here, Plaintiff does not explain what other parameters would be appropriate for the ALJ to include in her hypothetical question to the VE. The ALJ properly determined that Plaintiff had only moderate limitations with respect to social interaction, as discussed earlier with respect to the Paragraph B criteria. Therefore, the ALJ did not err when she posed hypothetical questions to the vocational expert which did not include greater social restrictions than occasional interaction with co-workers, supervisors, and the general public.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 12] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted. Affirmed.

**SO ORDERED.**  **ENTERED:**

**DATE:** **August 14, 2018**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**